<hr />

W. J. HUMBERT v. J. T. CRUMP.

No. 12,265.   (71 Pac. 239.)

SYLLABUS BY THE COURT.

CONTRACT—*Pasturing Cattle—Proof of Unavoidable Accident.*
Under a contract one party turned over to another a herd of cattle to be grazed for the season at a certain rate per head, and it was agreed that all of the cattle should be returned at the end of the season, unavoidable accident excepted. There was a stipulation in the contract that "in the event of such accident, as proof thereof, said first party shall furnish evidence thereof, which shall be the brand upon said missing cattle." All but five of the cattle were returned, and the brands on these five were not produced because the cattle had died, and the carcasses were not discovered until the brands had been obliterated and destroyed. All of the cattle had been properly cared for, and those for which an action was brought had died without fault or neglect of the agistor. *Held*, that the inability of the agistor to produce the brands on the missing cattle which had been lost by unavoidable accident did not make him liable to the owner for their value.

Error from Cowley district court; W. T. McBRIDE, judge. Opinion filed January 10, 1903. Affirmed.

*J. E. Torrance*, for plaintiff in error.

*G. H. Buckman*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : The basis of this litigation is a graz-. ing contract made between J. T. Crump, of the first part, and W. J. Humbert, of the second part. The essential part of the contract is as follows :

"Witnesseth, that said party of the first part does hereby agree to and with said second party to receive from said second party 107 head of cattle and to graze same for the season of 1898, from April 1 to October 15, and second party agrees to pay unto said first party for the same at the rate of $1.25 per head, payment to be made when cattle are taken from the pasture, the first party agreeing to return the full number of 'H' on right hip, the number of cattle so received by him, unavoidable accidents excepted. And in the event of such accident, as proof thereof, said first party shall furnish evidence thereof, which shall be the brand upon said missing cattle."

Pursuant to this contract Humbert delivered to Crump a large number of cattle, which the latter cared for in his pasture in all respects as required by the contract, and at the end of the pasture season he delivered back to Humbert all the cattle received except fifteen head, and he exhibited to plaintiff the brands from ten head of the cattle which had died, and they were settled for, together with the pasturage bill. Five head were not delivered nor were the brands thereon produced by Crump, but it was undisputed that Crump cared for the same in his pasture during the season in a proper manner ; that they died without fault or neglect on his part ; and, by reason of the bodies' becoming mutilated by birds, and before the carcasses were discovered by Crump, the brands were obliterated, and that it, therefore, became impossible for him to produce any of the brands from

the five head of cattle. Notwithstanding these admitted facts, Humbert brought an action to recover the value of the five head, insisting that, because Crump did not produce the brands from the missing cattle as evidence of their accidental death, he became liable to him for their value, which it is conceded was $140.75, but judgment was rendered against him.

Did the inability of Crump to produce the evidence mentioned in the contract make him liable for the missing cattle ? We think not. The essential features of the contract were to provide grass and proper care for the cattle during the grazing season, and then to return all of them to Humbert, except such as could not be returned by reason of inevitable accident. Humbert concedes that these provisions of the contract were strictly and literally complied with, and shall Crump be held liable for loss when there was neither neglect nor fault on his part? It is true he did not produce the evidence specified in the contract, that is, the brands from the cattle lost by unavoidable accident, but it was not provided that such should be the only evidence of accidental loss or destruction. The production of the brands was only evidence of whether Crump had exercised due care in the grazing and return of the cattle, and since Humbert conceded that due care had been exercised, and that all cattle had been returned except those which had been lost by inevitable accident, proof became unnecessary. Since the production of the brands as evidence was specified in the contract, possibly it may be said that they would have been the best evidence of care, but ordinarily when the best evidence is not available secondary proof may be produced. If Crump had killed the cattle and cut from the carcasses the brands and then sold to the butchers what remained of them,

Humbert would hardly have been willing to accept the brands as the only evidence of the proper care of the cattle.

The material parts of the contract were due care and the return of the cattle, inevitable accident excepted, on one part, and the payment of the pasturage charge on the other. It was agreed by Humbert that Crump's part was faithfully done, but it was also agreed that the production of the brands was an impossibility, and became impossible through no fault of Crump. It can hardly be assumed that the parties contemplated the performance of an impossibility, and the pleading of Humbert in this case shows that he did not regard the production of the brands as an essential feature of the contract, nor did it occur to him that the failure to furnish them should be a ground of recovery. He based his right of recovery on the failure of Crump properly to care for the cattle, alleging that he allowed his fences to become defective and his cattle to stray away and to become lost; that if they were dead at all it was the result of Crump's neglect and not through unavoidable accident. This was, therefore, his interpretation of the contract until the issues were joined in this action, and his stipulation that there had been no negligence was, in effect, an agreement that there was no liability.

The judgment is affirmed.

All the Justices concurring.